COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Willis and Annunziata
Argued at Richmond, Virginia


PHILIP SAM JEAN-LAURENT

OPINION BY
v.   Record No. 2888-99-2        JUDGE ROSEMARIE ANNUNZIATA
DECEMBER 12, 2000

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Thomas N. Nance, Judge

Esther J. Windmueller for appellant.

Thomas M. McKenna, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


The appellant, Philip Sam Jean-Laurent, was convicted of possession of cocaine with the intent to distribute. Jean-Laurent contends on appeal that the trial court erred in denying his motion to suppress evidence. He alleges that the police violated his Fourth Amendment rights by removing his luggage from a bus and searching those bags without his consent and that any evidence discovered as a result of this unlawful seizure and search should have been suppressed. Because we find that Jean-Laurent did not consent to the seizure and subsequent search of his bags, we reverse Jean-Laurent's conviction and remand the case to the trial court for further proceedings.

BACKGROUND

Guided by well established principles, we review the evidence in the light most favorable to the Commonwealth, the party prevailing below. Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). Detective Ronald Armstead observed Jean-Laurent at a Richmond bus station. Jean-Laurent got off a bus, without his luggage, and entered the bus station. Armstead followed Jean-Laurent into the terminal and observed Jean-Laurent speaking to another individual. Although Armstead could not hear what the two men were saying, he testified that Jean-Laurent appeared to be trying to hand the individual two baggage claim tickets.

When Jean-Laurent left the terminal, Armstead followed and approached Jean-Laurent just outside the terminal. Armstead explained that he was a narcotics officer trying to "stop the flow of illegal narcotics." Armstead informed Jean-Laurent that he was not under arrest or detention and asked Jean-Laurent where he was going. Jean-Laurent replied that he was going to High Point, North Carolina. Armstead asked Jean-Laurent about his ticket and whether he had any bags. Jean-Laurent responded that his ticket was on the bus and that he had bags both underneath and inside the bus. Armstead asked Jean-Laurent whether he had "any illegal narcotics on his person or in his bags," and Jean-Laurent replied, "no." When Armstead asked Jean-Laurent if he could "search his person," Jean-Laurent

responded by removing items from his pockets, including two baggage claim tickets. Armstead "asked him about that [the claim ticket] and he [Jean-Laurent] pulled it out and gave it to me [Armstead]." Armstead retained the tickets and asked Jean-Laurent to point out his luggage.

The two walked over to the bus and Jean-Laurent pointed to a white bag and then a black bag, the latter being on the other side of the bus. After Armstead removed the white bag from the bus, he proceeded to the other side of the bus and retrieved the black bag. While Armstead went around the bus to retrieve the black bag, another officer, Detective Stephanie Ruffin, asked Jean-Laurent if he had any contraband in the white bag. Jean-Laurent replied, "yeah, a knife." Ruffin told Jean-Laurent that she needed to see it, whereupon Jean-Laurent bent over and unzipped the bag. Ruffin then searched the bag. As Armstead was returning with the black bag, he walked by another officer, who had a canine passive glove dog with him. The dog alerted on the black bag, and on that basis, Armstead searched it. In the course of their search, the officers found knives in the white bag and cocaine in the black bag.

Armstead and Ruffin both testified that Jean-Laurent did not object to the search of either bag. Armstead stated, "He didn't even walk around the bus with me. He just stood over on the other side. He said that's the bag right there. I went and retrieved it and brought it around and the drug dog hit on it,

alerted to it."  Armstead, however, never asked Jean-Laurent for permission to retrieve or search his bags.

## ANALYSIS

"[A] seizure of personal property [is] per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause . . . [or unless] some [] recognized exception to the warrant requirement is present."  United States v. Place, 462 U.S. 696, 701 (1983).  Consent is one such exception to both the warrant and probable cause requirements.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

"'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'"  Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (quoting Via v. Peyton, 284 F. Supp. 961, 967 (W.D. Va. 1968)).  Although the consent need not be oral, mere acquiescence is not enough.  See id.; Walls v. Commonwealth, 2 Va. App. 639, 645-46, 347 S.E.2d 175, 178-79 (1986).  Additionally, the Commonwealth bears the burden of proving that consent was in fact given, and "that burden is heavier where the alleged consent is based on an implication." Walls, 2 Va. App. at 645, 347 S.E.2d at 178.  Although the Commonwealth bears the burden of proving that consent was in fact given, Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989), the presence of consent is a factual

question to be determined by the trier of fact. Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996). Therefore, we will only reverse the trial court's ruling on the suppression motion if plainly wrong. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Courts have found consent to a specific request to search a person when evidenced by conduct alone, such as turning and "placing [one's] hands against the wall without prompting," Bynum, 23 Va. App. at 417, 477 S.E.2d at 753, or shrugging one's shoulders and then extending one's arms. United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990).

However, conduct which evidences nothing more than acquiescence, particularly when no request to search has been made, has been held insufficient to constitute consent. In Parker v. Commonwealth, 255 Va. 96, 496 S.E.2d 47 (1998), the investigating officer asked a suspect if he could "pat him down" and the suspect responded by putting his arms up in the air. Id. at 100, 496 S.E.2d at 49. After the first officer conducted this search, a second officer approached the suspect and asked if he "had anything in his crotch." Id. The suspect responded by moving his clothing around. Id. During this process, the first officer saw an object through the suspect's underwear. Id. The first officer placed his hand on the object, realized it was crack cocaine, and removed the item. Id. The Virginia Supreme Court concluded that it could not be inferred that the

defendant had consented to the second search, id. at 105, 496 S.E.2d at 52, noting that the first officer never asked the suspect for permission to conduct the second search. Id. at 100, 496 S.E.2d at 49.

In Crosby v. Commonwealth, 6 Va. App. 193, 367 S.E.2d 730 (1988), we found that where an officer told a suspect that he was going to get a search warrant to search the suspect's home, and then asked the suspect for the key to his apartment, the suspect's act of turning over the key to the officer did not constitute consent to search the apartment. We noted that the officer "never requested to search the apartment" and that "acquiescence is not consent." Id. at 198-99, 367 S.E.2d at 733-34.

In this case, the challenged evidence was seized as a result of the canine's alert to Jean-Laurent's black bag as Armstead carried it from one side of the bus to the other. The propriety of the dog alert and the search it led to turn, however, on the lawfulness of the officer's seizure of the black bag from the bus, because the evidence fails to show that the dog would have alerted to the bag had it not been carried by the officer to the dog's location.

In this case, the officer asked to search Jean-Laurent's person. In response, Jean-Laurent pulled the claim tickets out of his pocket, along with some other items. When Armstead asked Jean-Laurent about the tickets, he handed them over. However,

Jean-Laurent did not hand over the claim tickets in response to a request to retrieve or search Jean-Laurent's bags.  In fact, at no point during the encounter did Armstead ever ask if he could seize or search Jean-Laurent's bags.  Jean-Laurent merely pointed out his bags when asked to do so.  Although Jean-Laurent did not object to the seizure of the black bag, he was not required to do so in order to preserve the non-consensual nature of the seizure.  The burden was upon the officer to obtain consent, not on Jean-Laurent to affirmatively deny consent.  See Walls, 2 Va. App. at 645-46, 347 S.E.2d at 178-79.  We find that where, as here, the officer did not ask for consent to retrieve the black bag, Jean-Laurent's passive response was, at best, ambiguous and not the "unequivocal and specific" consent to search required by law.  Elliotte, 7 Va. App. at 239, 372 S.E.2d at 419 ("Consent . . . is not lightly to be inferred.").

We disagree with the Commonwealth's argument that Jean-Laurent's alleged consent to the search of the white bag constituted implied consent to search the black bag.  First, the record discloses that Armstead unlawfully seized Jean-Laurent's black bag before he became aware of Jean-Laurent's alleged consent for Ruffin to search the white bag.  Second, any consent given was not voluntary.  After asking Jean-Laurent if he had any contraband in his bag, to which Jean-Laurent replied, "yeah, a knife," Ruffin told Jean-Laurent that she needed to see it.  In response to this command, Jean-Laurent unzipped the white

bag.  The burden of proving that consent "was freely and voluntarily given . . . is not satisfied by showing a mere submission to a claim of lawful authority."  Florida v. Royer, 460 U.S. 491, 497 (1983).

Because Jean-Laurent did not give consent for Armstead to seize his black bag, the cocaine obtained as a result of that unlawful seizure was inadmissible.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).  Although a dog alert may give probable cause to search a person's belongings, Brown v. Commonwealth, 15 Va. App. 1, 6-7, 421 S.E.2d 877, 881 (1992), such a search is improper where the discovery of the cocaine derived from an unlawful seizure of the bag.  See Mapp, 367 U.S. at 655 ("[A]ll evidence obtained by searches and seizures in violation of the Constitution is . . . inadmissible in a state court.").

Accordingly, we reverse the trial court's judgment, reverse Jean-Laurent's conviction, and we remand the case to the trial court for further proceedings if the Commonwealth be so advised.

Reversed and remanded.