COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Felton and Haley
Argued by teleconference


LEE ANDREW GRAHAM, II

                                        MEMORANDUM OPINION[*] BY
v.      Record No. 0281-04-3            JUDGE WALTER S. FELTON, JR.
                                                 JULY 19, 2005
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                        Joseph W. Milam, Jr., Judge

          Mark T. Williams (Williams, Morrison, Light and Moreau, on brief),
          for appellant.

          Eugene Murphy, Assistant Attorney General (Judith Williams
          Jagdmann, Attorney General; Margaret W. Reed, Assistant Attorney
          General, on brief), for appellee.


        On February 5, 2004, Lee Andrew Graham, II (appellant) was convicted in a bench trial of

possession of cocaine with intent to distribute in violation of Code § 18.2-248.  On appeal,

appellant contends that the trial court erred in denying his motion to suppress evidence seized

during a search of his person.  For the following reasons, we affirm the trial court.

                                           I.

        On appeal, we review the evidence in the light most favorable to the party prevailing

below, here the Commonwealth, together with all reasonable inferences that may be drawn

therefrom.  See Smith v. Commonwealth, 41 Va. App. 704, 712, 589 S.E.2d 17, 21 (2003).

Applying that principle, the evidence showed that around 12:30 a.m. on July 9, 2003, Officers

Turpin and Harper were patrolling, on foot, an area adjacent to an apartment complex in a known

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

high crime area, looking for gang activity and curfew violations, when they heard loud music some 150 yards away, coming from the apartment complex. As they arrived on the apartment grounds, they observed appellant sitting in a parked car with excessively loud music coming from it. Believing the loud music violated a local noise ordinance, the officers approached appellant who was seated in the front passenger seat of the car with the door open, talking to another individual. When appellant saw the officers, he leaned over, turned the music down and got out of the car, closing the door behind him. Turpin observed an open bottle of beer, still cold to the touch, on the ground within appellant's reach. Appellant denied the beer bottle was his and denied that he had been drinking. Noticing that appellant had "glassy eyes," Turpin asked him if he had "smoked any dope." Appellant denied doing so.

Turpin then asked appellant if he had "any guns, weapons or drugs or anything like that on him." Appellant "sort of shrugged his shoulders, threw his hands up and turned around," and put his hands on "the roof of the car." Appellant spread his legs and, leaning on the car, adopted "the typical frisk stance, . . . assuming the position." The officer immediately conducted a pat-down frisk of appellant's outer clothing with his open hands, given appellant's response to his questions. During the pat down, Turpin felt what he believed to be a pager in appellant's front pants pockets but continued his frisk. He then felt a "flat oblong, odd shaped rock" in appellant's right rear pants pocket, which he immediately recognized as a large rock of crack cocaine. He reached into appellant's pocket and removed the cocaine rock contained in a small clear plastic baggie. When the officer seized the cocaine, appellant stated, "You put that there," even though he was unable to see at the time what the officer pulled out of his pants. After he arrested appellant for possession of cocaine, Turpin searched his clothing, recovering $1,337 in

cash[1] and a pager. Subsequent forensic testing identified the suspected drug seized from appellant to be a 10.9 grams "rock" of cocaine. Testimony at trial placed a street value of the cocaine at around $1,100.

The trial court denied appellant's motion to suppress the evidence seized from him, and subsequently convicted him of possession of cocaine with intent to distribute, imposing a sentence of eight years imprisonment, with seven years suspended. Appellant appealed.

II.

On appeal, the burden of proving that the trial court's denial of the motion to suppress was reversible error lies with appellant, McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*), and the decision of the trial court will be disturbed only if plainly wrong, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). When we review such a denial, "we consider the evidence adduced at both the suppression hearing and the trial," Blevins v. Commonwealth, 40 Va. App. 412, 420, 579 S.E.2d 658, 662 (2003), aff'd on other grounds, 267 Va. 291, 590 S.E.2d 365 (2004), and "[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). Whether the seizure of the evidence from appellant was constitutionally valid involves a question of law which we review *de novo* on appeal. See Ornelas, 517 U.S. at 699.

Appellant contends that Turpin lacked authority to conduct a pat-down frisk while investigating misdemeanor noise and alcohol offenses; that the pat-down frisk was unreasonable because there was no basis for the officers to believe that he was armed and dangerous; and that

---

[1] The denominations of the recovered money were five one-hundred dollar bills, thirty-one twenty-dollar bills, eight ten-dollar bills, twenty-six five-dollar bills, and seven one-dollar bills.

by voluntarily assuming the frisk stance, he did not consent for Turpin to frisk him, but rather submitted to the officer's show of authority.

It is well established that a police search made pursuant to valid consent does not implicate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (*en banc*). "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.'" Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth, 412 U.S. at 248-49). The United States Supreme Court has articulated the standard for measuring the scope of an individual's consent under the Fourth Amendment to be "'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). "Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances." Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996).

"Where consent is based on implication, the Commonwealth bears a heavy burden of proof." Johnson v. Commonwealth, 26 Va. App. 674, 687-88, 496 S.E.2d 143, 150 (1998) (citations omitted). "Although the consent need not be oral, mere acquiescence is not enough." Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78, 538 S.E.2d 316, 318 (2000). Courts have found consent to search a person when evidenced by conduct alone, such as turning and "placing [one's] hands against the wall without prompting," Bynum, 23 Va. App. at 417, 477 S.E.2d at 753, or shrugging one's shoulders and then extending one's arms, United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990).

- 4 -

When Turpin asked appellant if he had "any guns, weapons or drugs or anything like that on him," his question made clear his concern over the potential presence of weapons. Appellant did not respond orally but immediately assumed the frisk position. His assumption of the "typical frisk stance," in response to the officer's inquiry, equally suggested that he had a weapon or drugs or both, or that he denied such and invited the officer to dispel any suspicion by frisking him. The record reflects that appellant's behavior was voluntary and not the product of coercion or intimidation. The officers approached appellant on foot. Neither officer had his gun drawn. When appellant saw the officers approach, he voluntarily turned down the music and waited outside the car for them. Turpin did not mention to appellant that he might be charged with an offense. The encounter had been brief, and appellant was not "boxed in."

We conclude from the record that appellant's non-verbal response, shrugging his shoulders and assuming the frisk position, to the question of whether he had guns, weapons, or drugs on his person, invited the officer to frisk him. See Jones v. Commonwealth, 172 Va. 615, 620, 1 S.E.2d 300, 302 (1939) ("In the absence of vocal expressions evidencing intention, we must look to actions and surrounding incidents."). See also United States v. Steward, 93 F.3d 189, 192 (5th Cir. 1996) (using "magic words" such as "yes" are not necessary to evince consent because "the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect").

Although Turpin did not ask or direct appellant to assume the frisk position, and did not ask if he could pat him down, the officer was objectively reasonable in inferring that appellant assented to his patting him down to satisfy his concern that he may have weapons or drugs on his person. Appellant cannot complain when the frisk he invited led to the officer's discovery of the cocaine in his rear pocket.

While the trial court did not specifically rule on the issue of consent raised by the Commonwealth, it denied the motion to suppress, concluding that the pat-down frisk was lawful for purposes of the officer's safety. Because we find that appellant invited Turpin to frisk him, we conclude that the trial court did not err in denying his motion to suppress, although it did so for a different reason, i.e., the need to assure the officer's safety in continuing his investigation, given the early morning hour, the high crime location, and the responses to his questions. See Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992) (holding that an appellate court may affirm the trial court when it reached the right result for the wrong reason when the reason was raised at trial).

III.

Appellant also contends that, even assuming the brief encounter and frisk were permissible under Terry v. Ohio, 392 U.S. 1 (1968), Turpin's removal of the cocaine from his rear pants pocket exceeded the scope of the pat-down frisk. Appellant argues that Turpin had, at most, authority to frisk to determine if any weapons were on his person. It is well established that "[a] search for weapons in the absence of probable cause to arrest . . . must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." Id. at 25-26. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." Adams v. Williams, 407 U.S. 143, 146 (1972); see Murphy v. Commonwealth, 264 Va. 568, 574, 570 S.E.2d 836, 839 (2002). The pat-down frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby . . . ." Terry, 392 U.S. at 26; see also Ybarra v. Illinois, 444 U.S. 85, 94 (1979).

It is equally well established that contraband discovered during a lawful frisk is admissible so long as the search does not exceed the limited intrusion permitted by Terry. See Murphy, 264

Va. at 574-75, 570 S.E.2d at 839; Hall v. Commonwealth, 22 Va. App. 226, 228, 468 S.E.2d 693, 694 (1996). In Minnesota v. Dickerson, 508 U.S. 366 (1993), the Court considered "whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry." Dickerson, 508 U.S. at 373. In answering that question in the affirmative, the Court stated:

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

Id. at 375-76. However, once an officer has determined that the object is not likely a weapon, and its shape or size does not immediately indicate it is contraband, he may not continue the search to determine if the item is contraband. See id. at 378; see also Murphy, 264 Va. at 574, 570 S.E.2d at 839.

Appellant's reliance on Murphy is misplaced. In Murphy, a police officer conducting a pat-down frisk for weapons felt a plastic bag in Murphy's pocket. Suspecting that the bag contained marijuana, the officer removed it, and found that it did. 264 Va. at 571-72, 570 S.E.2d at 837-38. The Court found the officer's seizure of the plastic bag exceeded the scope of the frisk as only the character of the plastic bag was immediately apparent, and the object he felt was not immediately identifiable as a weapon or contraband. Id. at 574-75, 570 S.E.2d at 839.

Here, the record reflects that it was immediately apparent to Turpin from "one pat" that the "flat oblong, odd shaped rock" was crack cocaine. Turpin had eleven years experience as a police officer, and had conducted more than thirty drug arrests. He testified that on previous occasions he had been able to identify crack cocaine by feel during pat-down frisks. The trial court found the officer's testimony credible that, based on his experience, he immediately concluded from touching

the object that it was "one big rock" of cocaine.  The officer did not manipulate the object in any way once he first felt it.  Significantly, during his frisk of appellant, Turpin first felt appellant's pager, but because he concluded it was not immediately identifiable as a weapon or contraband, he continued his frisk of appellant for weapons, seizing the pager and a wad of money only following his arrest of appellant on the drug offense.

Based on our review of the record, we find no error in the trial court's denial of appellant's motion to suppress the evidence.  Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>