COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


RONALD RAY ARMS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0535-07-1                 JUDGE RANDOLPH A. BEALES
                                                         MAY 27, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                              Aundria D. Foster, Judge

            Charles E. Haden for appellant.

            Richard B. Smith, Special Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


      Ronald Ray Arms (appellant) pled guilty to abuse and neglect of an incapacitated adult,

in violation of Code § 18.2-369(A).  On appeal, he argues that the trial court erred in denying his

motion to suppress.  For the reasons that follow, we affirm.

                                    I.  BACKGROUND

      "'On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'"

Kyer v. Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (*en banc*) (quoting

Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003)).

      On May 10, 2005, Officer Jennifer Jones of the Newport News Police Department "was

dispatched to 538 Denbigh Boulevard in reference to a welfare check on an elderly female living

in the residence."  "[T]he reporting person stated to dispatch they felt the woman was not being

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

properly taken care of by her adult son." Upon her arrival, Jones asked a young man, who was talking to a group of teenagers in a parked car, whether she had arrived at 538 Denbigh Boulevard. The young man said that she had arrived at that address, and acknowledged that there was an elderly woman living there. Jones thought this young man was family ("either a nephew or grandson") of the elderly woman.

As Jones walked toward the residence, appellant met her "outside on the sidewalk area." Jones introduced herself and told him she was dispatched to the address to perform a welfare check on an elderly woman. Appellant confirmed that there was an elderly woman in the house – his mother. Jones asked appellant if she could go inside the residence to check on her. According to Jones, appellant "didn't say anything to me." Jones described appellant's physical response as "hesitant. It wasn't like he was uncooperative. He just kind of paused and then I said, 'Can we go inside?'" Appellant then "turned around[,] and he walked up the stairs" that led to the front door of the residence. Jones "turned around and followed him." Appellant led Jones "into the residence," and she followed him inside. Jones also explained that she "never let[s] anyone, as far as police procedure, behind [her], to [her] left or side."

After crossing the threshold of the doorway, Jones noticed a strong odor of urine, which was "kind of overwhelming." Jones saw appellant's mother seated in a recliner in the living room approximately ten feet from the doorway. "She was slumped over to one side of her chair, to the left, so her head was slumped over. She was covered over by a single sheet." Jones further detailed her condition, recounting the following:

> Her cheekbones were very sunken in. You could see the bone part.
> Right below the bone, I guess where your temples would be
> considered, was very sunken in. Her lips appeared to be not
> blistered, but dry, kind of chapped, and she was unresponsive. Her
> eyes weren't – she wasn't blinking like a normal individual would,
> but her eyes weren't closed, they were kind of half open and half
> shut, but she was unresponsive.

Appellant told Jones that he was his mother's primary caregiver. Appellant "stated that she didn't have any serious medical conditions, the only thing she had was Alzheimer's disease." Appellant said that his mother's last doctor's appointment was six months prior. Appellant also "stated his mom did not have any control over her faculties or bowel movements," and he explained that "they don't use diapers anymore, that she either sits on her chair with the cushions covered by trash bags or on the couch." Appellant said that his mother did not have any clothes on – she was just covered by the sheet. Appellant's mother had rashes on her skin.

Officer D.W. Bush arrived at the scene shortly after Officer Jones. He remembered smelling a strong odor of urine and seeing appellant's mother in the recliner "in a fetal position." Bush "could see open sores on her body, red rashes, [she was] very, very thin, malnourished" and "unresponsive."

Based on her observations of appellant's mother's condition, Jones asked for dispatch to send a medic to the residence. EMT Brenda Blackwell was dispatched to the residence along with other medical personnel. Blackwell remembered noticing an overwhelming odor of urine while she stood in the front yard. Blackwell and the other medics decided to transport appellant's mother to the hospital.

Josh Brendle, appellant's nephew and the young man Jones encountered upon her arrival, said that he lived with appellant. Brendle said he could not hear the conversation between Jones and appellant, but he saw appellant enter the house after Jones. Brendle said that he never heard appellant tell Officer Jones that she could not come inside, nor did he thereafter hear appellant tell anyone to leave the residence.

Appellant testified that he "just froze" when he met Officer Jones and claimed that he could not move or talk upon seeing her. According to appellant, Jones just walked past him and

through the front door into his residence. He claimed that he did not hear what Jones asked him, but that she might have asked him to enter the house.

Appellant was indicted on September 12, 2005 for abuse or neglect of an incapacitated adult, in violation of Code § 18.2-369(A). He asked the court to suppress the evidence because Officer Jones entered the house without a warrant or probable cause. The trial court denied appellant's motion to suppress, ruling that Officer Jones's function as a community caretaker allowed her to enter the residence without a warrant. Given its holding, the trial court declined to rule on the Commonwealth's consent argument. Even so, after noting "some conflict" in the evidence on this issue, the trial court resolved the most salient factual issue by specifically finding that, following the officer's request for permission to enter the home, "the officer went into the home and with Mr. Arms [appellant] *leading the way.*" (Emphasis added.) Appellant entered a conditional <u>Alford</u>[1] guilty plea to the charge. This appeal followed.

## II. ANALYSIS

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.

<u>Malbrough v. Commonwealth</u>, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008).

Appellant argues that the trial court erred in denying his motion to suppress. To counter appellant's argument, the Commonwealth advances three different theories in support of its claim that Officer Jones's entry into appellant's residence without a search warrant was

---

[1] <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

reasonable under the circumstances:  1) appellant's consent to the warrantless entry, 2) the community caretaker doctrine, and 3) the doctrine of inevitable discovery.[2]

## A. CONSENT

"[I]n any Fourth Amendment review, the touchstone of our analysis is the reasonableness of the search under the circumstances."  Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008).  That being said, "[w]arrantless searches and seizures in a person's home are presumptively unreasonable.  However, courts recognize exceptions to this general rule in several circumstances, including when a party voluntarily consents to the search."  Id. (citation omitted).

> "Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.  Although the consent need not be oral, mere acquiescence is not enough.  Additionally, the Commonwealth bears the burden of proving that consent was in fact given, and that burden is heavier where the alleged consent is based on an implication."

Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000).  "Courts have found consent to a *specific request* to search a person when evidenced by conduct alone, such as turning and 'placing [one's] hands against the wall without prompting,' Bynum [v. Commonwealth], 23 Va. App. [412,] 417, 477 S.E.2d [750,] 753 [(1996)], or shrugging one's shoulders and then extending one's arms.  United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990)."  Id. at 79, 538 S.E.2d at 318.  See also Barkley v. Commonwealth, 39 Va. App. 682, 688,

---

[2]   On appeal, we may affirm on grounds different from those on which the trial court based its decision so long as the issue was addressed at trial, evidence exists in the record to support those alternate grounds, the trial judge's decision does not reject those grounds, and no further factual resolution is necessary to support the decision.

Debroux v. Commonwealth, 32 Va. App. 364, 371-72, 528 S.E.2d 151, 155, aff'd, 34 Va. App. 72, 537 S.E.2d 630 (2000) (*en banc*).

576 S.E.2d 234, 237 (2003) (finding consent to enter where, in response to an officer's request to continue the conversation inside, the defendant, "[w]ithout hesitation," "allowed the officers in the apartment").

"However, conduct which evidences nothing more than acquiescence, particularly when no request to search has been made, has been held insufficient to constitute consent." Jean-Laurent, 34 Va. App. at 79, 538 S.E.2d at 318. Compare United States v. Griffin, 530 F.2d 739 (7th Cir. 1976) (finding implied consent to enter an apartment where, even though the defendant initially responded "no" and "shut the door in the officers' faces," the defendant, in response to a second request from the officers, "stepped back, leaving the door open, and led the officers into the apartment"); with United States v. Shaibu, 920 F.2d 1423, 1424 (9th Cir. 1989) (finding no consent where "officers did not ask permission to enter [the defendant's] apartment nor state their intention to do so, but simply followed [the defendant] through the open door"; the court explicitly distinguished Griffin on the basis that, unlike with the officers there, the officers never requested entry into Shaibu's apartment).

The evidence in this record demonstrates that Officer Jones, after explaining to appellant that she was there to do a welfare check on an elderly lady, made a specific request to appellant by asking him, "Can we go inside?"[3] According to Jones, appellant said nothing in response to her request to go inside the residence. However, he did respond. He changed his direction by turning around, walked up the steps to his front door, and led Jones into the residence. While appellant and his nephew, Josh Brendle, remembered the encounter differently and said that Jones entered the residence first, the trial court specifically found that "the officer went into the home [] with Mr. Arms [appellant] leading the way." Since that finding of fact is not plainly

---

[3] Appellant, who lived at 538 Denbigh Boulevard with his mother, unquestionably possessed the authority to give consent to Jones's specific request to enter his residence.

wrong or without evidentiary support, we are bound by it on appeal. See Malbrough, 275 Va. at 169, 655 S.E.2d at 3 ("We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence."). In addition, Jones specifically testified that she "never let[s] anyone, as far as police procedure, behind [her], to [her] left or side."

Here, appellant's actions amounted to more than mere acquiescence. If he had simply stood still and watched Jones enter the house, appellant might have only acquiesced to Jones's request. Instead, as the trial court found, appellant turned around and led Jones directly inside. Based upon appellant's response to her specific request to enter the residence, Jones could reasonably believe that she had received consent, and not mere acquiescence, to enter the residence. Therefore, we hold the facts of this case taken in the light most favorable to the Commonwealth, which we must do in this appeal given that the Commonwealth prevailed on the motion to suppress, demonstrate that appellant consented to Jones's entry into his residence. Consequently, Jones's warrantless entry into appellant's residence "comport[ed] with the standard of reasonableness required by the Fourth Amendment." Craddock v. Commonwealth, 40 Va. App. 539, 552, 580 S.E.2d 454, 461 (2003).

### B. COMMUNITY CARETAKER/ INEVITABLE DISCOVERY DOCTRINES

Because we hold that appellant's actions supplied Officer Jones with consent to enter appellant's residence, we need not reach whether or not the trial court correctly applied the community caretaker doctrine to the facts of this case. In addition, we need not reach whether or not the doctrine of inevitable discovery applies to the case at bar.

### III. CONCLUSION

Based upon the foregoing, we affirm the trial court's denial of appellant's motion to suppress.

Affirmed.