UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Russell, AtLee and Malveaux
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.        Record No. 1821-17-2

ANTONIO JERMAINE SPENCER

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
MAY 1, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Joi Jeter Taylor, Judge

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Kelsey M. Bulger, Assistant Public Defender, for appellee.

Pursuant to Code § 19.2-398(A)(2), the Commonwealth of Virginia appeals the circuit

court's pretrial order granting Antonio Jermaine Spencer's motion to suppress evidence seized by

police prior to his arrest on October 16, 2017.  On appeal, the Commonwealth contends that the

encounter between Spencer and the police that led to the discovery of first marijuana and

subsequently a firearm was consensual, and thus, the circuit court erred in granting the motion to

suppress.  For the reasons that follow, we reverse the judgment of the trial court.

BACKGROUND

In general, because the circuit court granted Spencer's motion to suppress, we view the

evidence in the light most favorable to Spencer, granting him the reasonable inferences that flow

from the evidence.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48

(1991).  However, in reaching its decision, the circuit court made certain express factual findings

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

unfavorable to Spencer and rejected his testimony regarding certain issues. Such express "findings of fact . . . are presumed to be correct," and we are bound by them unless such a "finding is plainly wrong or is without credible evidence to support it." Floyd S. Pike Elec. Contractor, Inc. v. Commissioner, Dep't of Labor & Industry, 222 Va. 317, 322, 281 S.E.2d 804, 807 (1981).

So viewed, the evidence establishes that around 10:30 p.m. on April 20, 2017, Officers Herbert Baer and Cole Kelly of the Richmond Police Department were in uniform and on foot patrol in the Mosby Court area talking to people regarding a double homicide that recently had taken place. They encountered Spencer and another individual walking on the sidewalk. The officers did not draw their weapons, but were carrying flashlights, which they used to illuminate Spencer, his companion, and the area around them.

As the men approached the officers, Baer asked them if they lived on the property. The men said they did not, and Spencer stated that they were walking back to their car to leave the area. Baer asked the men for their identification, and Spencer handed Baer a Virginia identification card, which Baer gave to Kelly. While Kelly was recording appellee's identifying information, Baer continued to talk to Spencer. The tone of the conversation was casual.

During the conversation, Baer saw the white top of a prescription pill bottle in a "side cargo pocket" of Spencer's pants. Baer asked Spencer if he had a prescription for the pill bottle. Spencer replied that he did not.[1]

---

[1] Spencer testified that he said he did have a prescription for the pill bottle. The circuit court rejected Spencer's testimony in this regard, finding that "Baer asked [Spencer] if he had a prescription for the bottle; [Spencer] said he did not."

Baer asked Spencer if he could see the pill bottle, and Spencer handed the pill bottle to Baer in response.[2] The bottle itself, which was blue, did not have a label.[3] In handing over the bottle, Spencer did not make any statement as to whether or not Baer could open the bottle. The circuit court found that upon receiving the bottle, Baer "immediately removed the cap and found a green leafy substance inside the bottle." The substance appeared to be marijuana. Baer then patted down Spencer and found a firearm in his pants.

Spencer moved to suppress the evidence that was "seized as a result of the warrantless seizure and search of [Spencer]," arguing that he was seized in violation of the Fourth Amendment and that the subsequent search of the pill bottle and his person also violated the Fourth Amendment. The Commonwealth argued in response that Spencer's encounter with the officers was consensual up to and including Baer's discovery of the marijuana in the pill bottle, and thus, Spencer was neither unlawfully seized nor unlawfully searched.

The circuit court granted the motion to suppress, concluding that, although it began as a consensual encounter, the nature of the officer's interaction with Spencer changed when they requested his identification and he complied. Specifically, the circuit court found "that the

---

[2] The manner in which Baer came to possess the bottle was disputed at the suppression hearing. Spencer testified that he did not give the bottle to Baer, but that Baer took "the pill bottle out of my pocket." In the initial order ruling on the motion to suppress, the circuit court detailed the different versions of how Baer came to possess the bottle but did not resolve the issue, finding that "regardless of how Officer Baer came to possess the pill bottle, it was unlawfully seized." The Commonwealth, noting that determination of how Baer came to possess the bottle would affect how it would choose to proceed, requested that the circuit court make a factual finding on the issue. Subsequently, the circuit court, stating that it found Baer credible regarding parts of the encounter, concluded that the pill bottle "was tendered to [Baer] by [Spencer] based on a request from" Baer. Although the circuit court rejected Spencer's version of how Baer came to possess the bottle, the circuit court rejected as incredible Baer's testimony that he could see that there was something inside the blue pill bottle without opening the pill bottle. Specifically, the circuit court stated that Baer's testimony that he could see something in the bottle before opening it was the "point at which I found [Baer's] testimony to be incredible."

[3] The Commonwealth introduced photographs of the bottle into evidence at the suppression hearing.

encounter was consensual until [Spencer] complied with Officer Baer's request for identification. At that point, [Spencer] was seized as he had submitted to a show of police authority and reasonably believed he was not free to leave while Officer Kelly checked his identification card."

From this conclusion, the circuit court found that Baer's search of the bottle was unlawful because the purportedly impermissible seizure rendered any compliance with Baer's request to see the bottle involuntary.[4] Alternatively, the court held that, assuming Spencer "voluntarily gave the bottle to the officer, the evidence does not support the Commonwealth's argument that inherent consent to remove the cap existed."

The Commonwealth appeals to this Court, stating as its sole assignment of error that

> [t]he trial court erred in suppressing the evidence, namely the firearm recovered during the search incident to arrest, based on its finding that the police officer illegally detained the defendant, illegally possessed and illegally searched the pill bottle containing marijuana, and ultimately unlawfully conducted a search incident to arrest resulting in the firearm's recovery.

## ANALYSIS

### I. Spencer was not seized for Fourth Amendment purposes until after the discovery of the marijuana.

In evaluating a claim that a person was seized by police in violation of the Fourth Amendment, a court must first determine the nature of the police-citizen encounter. For the purpose of Fourth Amendment analysis, such encounters have been divided

> into three categories. First, there are communications between police officers and citizens that are consensual and, therefore, do not implicate the [F]ourth [A]mendment. Second, there are brief investigatory stops which must be based on specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant a limited intrusion. Third, there are

---

[4] In its initial order, the circuit court addressed the alternative scenario in which Baer, instead of being given the bottle, took it from Spencer's pocket. The court expressly found that Baer "lacked probable cause to take" the pill bottle; however, given the trial court's subsequent ruling that Baer was given the pill bottle, this scenario is not before us in this appeal.

highly intrusive, full-scale arrests, which must be based on probable cause.

Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988).  Here, the Commonwealth does not argue that the officers had either probable cause or reasonable articulable suspicion to justify a detention of Spencer prior to finding the marijuana in the pill bottle; rather, the Commonwealth argues that, until the marijuana was discovered, the encounter was a consensual one that did "not implicate the [F]ourth [A]mendment."  Id.

"[W]hether a person has been seized in violation of the Fourth Amendment . . ." or is engaged in a consensual encounter with police is a question that we review *de novo*.  Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003).  In conducting our review, we defer to the circuit court's finding of historical fact.  Id.  Thus, circuit courts make final factual determinations regarding *what* happened, and appellate courts ultimately are responsible for determining the Fourth Amendment *significance* of those factual determinations.

"In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority."  Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997).  Ultimately, an encounter is consensual unless "a reasonable person would not feel free to decline an officer's requests or would not feel free to leave . . . ."  Bandy v. Commonwealth, 52 Va. App. 510, 516, 664 S.E.2d 519, 522 (2008) (internal quotation marks and citation omitted).[5]

In making this determination, we consider the totality of the circumstances.  Harris, 266 Va. at 32, 581 S.E.2d at 209.  The Supreme Court has recognized

> [v]arious factors . . . as relevant in determining whether a seizure has occurred, including the threatening presence of a number of

---

[5] Because the standard of whether a reasonable person would have felt free to leave is an objective one, a citizen's subjective belief that he is not free to leave is not dispositive.  Cf. Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary . . . Fourth Amendment analysis.").

- 5 -

> police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

Id.

Here, the evidence establishes that two citizens were faced with only two officers. No weapons were drawn by the officers, and, by all accounts, the tone of the conversation between Baer and Spencer was collegial. Prior to the discovery of the marijuana, no physical restraint was used, and Baer did not issue commands to Spencer, but rather, only made requests. Although the officers illuminated Spencer, his companion, and the area with flashlights, given the time of night and description of the lighting, the action was reasonable and did not connote a threat or show of force.[6]

Spencer contends (and the trial court found) that the encounter became a seizure once he provided his Virginia identification card to Baer. The trial court found that once this occurred, Spencer "had submitted to a show of police authority and reasonably believed he was not free to leave" so long as the police possessed his identification card.

Absent some other coercive factor not present here, reaching this conclusion is foreclosed by the Virginia Supreme Court's decision in Branham v. Commonwealth, 283 Va. 273, 720 S.E.2d 74 (2012). In Branham, shortly after midnight, three law enforcement officers in two marked police cars encountered Branham while he was parked on a private driveway. Id. at 276-77, 720 S.E.2d at 76. One of the officers "turned his spotlight on" Branham's car, approached the car, and "asked Branham for his driver's license." Id. at 277, 720 S.E.2d at 76.

---

[6] Although its conclusion is not binding upon us, we note that the trial court similarly concluded that none of these underlying factors suggested anything other than a consensual encounter, finding that "the encounter was consensual until [Spencer] complied with Officer Baer's request for identification."

Branham complied with the request, and, while a license check was underway, one of the officers had a conversation with Branham and requested Branham's permission to search Branham's person. Id. Branham consented and, in the resulting search, the officer found "a plastic baggie containing an off-white powder that appeared . . . to be cocaine," which led the officer to arrest Branham. Id. at 278, 720 S.E.2d at 77.

Much as Spencer does here, Braham sought to suppress the fruits of the search, arguing that he was impermissibly seized when he complied with the officer's request for his license. Id. The Supreme Court rejected that argument, finding that, standing alone, complying with an officer's request for a license does not convert a consensual encounter into a seizure and that, under the circumstances, the officer's "request to see [the] driver's license was no more than a request, and Branham's compliance was voluntary and not coerced." Id. at 280, 720 S.E.2d at 78.

Applying this rationale to the instant case, Spencer was not seized for Fourth Amendment purposes when he provided Baer with his identification card. If anything, the surrounding circumstances in Branham were more coercive; Branham, who was alone, encountered three officers while Spencer and his companion were met by only two. Accordingly, the circuit court erred in concluding that Spencer was seized at any point prior to the discovery of the marijuana. As a result, the circuit court also erred in concluding that Spencer's act of giving Baer the pill bottle was involuntary because it "occurred during a seizure."[7]

II. Spencer's actions constituted consent for Baer to open the pill bottle.

Our conclusion that, based on the facts found by the circuit court, Spencer voluntarily gave the pill bottle to Baer does not end the analysis. The Commonwealth does not contend that

---

[7] There is no question that Spencer was seized for Fourth Amendment purposes after the discovery of the marijuana; however, at that point, the officers had probable cause to arrest him as a result of the discovery of the marijuana.

the mere existence of the pill bottle provided a sufficient basis to allow a search of the bottle consistent with the Fourth Amendment.  Rather, the Commonwealth contends that by voluntarily giving the bottle to Baer, Spencer consented to a search of the bottle.

As noted above, police need neither probable cause nor reasonable articulable suspicion to search a person, place, or thing if a citizen consents to the search.  "[S]earches made by law enforcement officers pursuant to a valid consent to search do not implicate the Fourth Amendment."  Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*).  In determining whether a consent search was valid, "we are bound by the trial court's findings of historical fact[,]" but "we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  Id. at 454, 524 S.E.2d at 158-59.  Thus, as with the seizure question discussed above, the circuit court makes the determination regarding *what* happened between Baer and Spencer, but appellate courts have the ultimate responsibility for determining the Fourth Amendment *significance* of those factual determinations.

This bifurcated review makes sense because Fourth Amendment analysis does not turn on the subjective intentions and understandings of either the officer or the citizen.  Cf. Whren v. United States, 517 U.S. 806, 813 (1996).  Determining whether a person's statements and actions constitute a valid consent to search an object is an objective question.  As the United States Supreme Court has observed, "[t]he standard for measuring the *scope* of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  Florida v. Jimeno, 500 U.S. 248, 251 (1991) (emphasis added) (reversing the Florida Supreme

Court's decision that affirmed a trial court's determination that the scope of consent allowing a vehicle search did not include opening a container found in the vehicle).[8]

Thus, the question before us is whether a reasonable person, considering the facts found by the circuit court, would have believed that Spencer effectively had consented to the opening of the pill bottle. For the following reasons, we hold that a reasonable person would have so concluded, and thus, reverse the circuit court's granting of Spencer's motion to suppress.

Based on the facts found by the trial court, Baer, upon seeing the pill bottle, asked Spencer whether he had a prescription for the pill bottle. Viewed in this context, a reasonable person would conclude that Baer was suspicious that the bottle contained contraband, whether an illegal substance or a legal substance that Spencer was without authority to possess. According to the circuit court, Spencer responded that he "did not." A reasonable person learning this fact certainly would recognize that the response would heighten the officer's suspicion that the bottle contained contraband.

Although the circuit court does not make an express finding of what Baer next asked, it appears to have concluded that Baer asked to "see it," and we assume that was the request made

_____

[8] As both Spencer and the dissent note, we previously have stated that, regarding consent searches, the issue of consent is a factual one. See, e.g., Jean-Laurent v. Commonwealth, 34 Va. App. 74, 79, 538 S.E.2d 316, 318 (2000) (noting that "the presence of consent is a factual question to be determined by the trier of fact"); Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996) (noting that "[b]oth the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances"). We continue to adhere to this view; however, nothing in our recognition of a circuit court's fact-finding role should be read as abdicating our role to determine the significance of the facts found to the ultimate Fourth Amendment question. Whether the *hypothetical* "typical reasonable person" would have understood Spencer's action of giving the pill bottle to Baer as manifesting consent for Baer to open the pill bottle simply is not a question of historical fact; it is a mixed question of law and fact that we review *de novo*. Reading these cases in the manner suggested by both Spencer and the dissent would run afoul of the bifurcated standard of review that prior decisions of both the United States Supreme Court and this Court sitting *en banc* have made clear applies in cases involving consent searches. See, e.g., Jimeno, 500 U.S. at 251; Hughes, 31 Va. App. at 454, 524 S.E.2d at 158-59.

of Spencer. Although a request to "see" something can be interpreted as a request simply to gaze at an object, in everyday speech it is often understood as a request to be given an object to allow for inspection. Dictionaries contain definitions of "see" consistent with both a purely visual experience and something more tactile. See, e.g., Webster's Third International Dictionary, 2054 (compare one definition of "see" as "to perceive by the eye: apprehend through sight" with others, including "to have presented for observation or consideration" and "to direct one's attention to: put under observation"). Here, given the context of the conversation to that point, we believe the typical reasonable person would conclude that Baer's request to "see" the pill bottle was not a request to look at it from a distance but was a request to have the bottle "presented for observation or consideration."[9]

Once Spencer had given Baer the bottle, the question becomes whether a reasonable person would conclude that, given the context of the encounter to that point, consent had been given for Baer to open the pill bottle. Given the questions that would have been understood to indicate that Baer was interested in the bottle because it may contain contraband, Spencer stating that he did not have a prescription for the bottle and giving no indication that he did not want Baer to open the bottle, and Spencer's handing the bottle, which did not have a label,[10] to Baer, a typical reasonable person would conclude that consent had been given for Baer to open the bottle.

---

[9] Although Spencer's subjective understanding is not material to the ultimate question, we note that, in response to the request, he did not hold the bottle up for Baer simply to gaze at, but rather, handed the bottle to Baer.

[10] Baer did not know that the bottle did not have a label until after Spencer produced it; however, Spencer would have known the bottle did not have a label before he produced it. In any event, the lack of a label would have been readily apparent once Spencer removed the bottle from his pocket.

- 10 -

Our conclusion finds support in the decision of the United States Court of Appeals for the Fifth Circuit in United States v. Stewart, 93 F.3d 189 (5th Cir. 1996). Although not binding on us, we find it persuasive given the factual similarities. In Stewart, law enforcement officers approached Stewart in an airport and engaged her in conversation. Id. at 191. During the conversation, the officers asked questions demonstrating that they were interested in drug trafficking and Stewart responded that she only had prescription medication in a bottle that she held up for the officers to see. Id. One of the officers then "asked to look at the bottle, and Stewart handed it to him. . . . [The officer] then opened the bottle, looked inside, and observed [what the officer] suspected was a controlled substance." Id.

Stewart moved to suppress the contraband discovered in the bottle, arguing that her tendering the bottle in response to a request by the officer to "look at" the bottle did not evidence consent for the officer to open the bottle. Id. at 192. After noting that "[t]he standard for measuring the scope of the suspect's consent is objective reasonableness . . . [and that] the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect[,]" the Fifth Circuit concluded that, given the context of the conversation that had preceded the tendering of the pill bottle, "it [was] objectively reasonable to expect [the officer] to look in the bottle after being granted permission to look at the bottle . . . , [and thus,] [t]he search was within the scope of Stewart's consent." Id.

For the same reasons, we reach the same conclusion, and find that Spencer's actions viewed in context evidenced consent for Baer to open the pill bottle, and thus, Baer's doing so did not offend the Fourth Amendment. Accordingly, we reverse the judgment of the trial court

suppressing the evidence, namely the firearm that was discovered as a result of the search of Spencer's person that followed Baer's discovery of the marijuana in the pill bottle.[11]

CONCLUSION

For the foregoing reasons, we conclude that, under the applicable precedents, Spencer consented to the search of the pill bottle that led to the search of his person and subsequent discovery of evidence. Accordingly, we reverse the judgment of the circuit court suppressing the evidence found as a result of the search of his person and remand the case to the circuit court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[11] In both its petition and its assignment of error, the Commonwealth limits the relief requested to reversal of the trial court's suppression of the discovery of the firearm.

Malveaux, J., concurring, in part, and dissenting, in part:

I concur in the majority opinion that the defendant's encounter with police was consensual. However, I respectfully dissent from the majority holding that Spencer consented to the search of the pill bottle's contents.

When Spencer encountered Officers Baer and Kelly, they informed him they were checking for trespassers and talking to people about a double homicide that had recently occurred in the area. Spencer complied with Baer's request for identification, and while Kelly noted his information, Baer saw a pill bottle in Spencer's pocket. Baer then asked Spencer "if he had a prescription for the bottle," and Spencer replied that he did not. Baer requested to "see the bottle," and Spencer gave it to him. Upon receipt of the bottle, Baer noted that "it did not have a label anywhere around [it]." As soon as Baer was in possession of the bottle, he opened it and discovered marijuana. Although the circuit court concluded that the search of the pill bottle was unlawful because Spencer was seized by the officers, and thus did not act voluntarily when he gave Baer the bottle, it also found that "even if [Spencer] voluntarily gave the bottle to [Baer], the evidence does not support the Commonwealth's argument that inherent consent to remove the cap existed."

In an appeal brought by the Commonwealth pursuant to Code § 19.2-398, we view the facts in the light most favorable to the prevailing party below, and we grant that party all reasonable inferences fairly deducible from that evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "We examine a trial court's factfinding 'with the highest degree of appellate deference,'" and "[t]his deferential standard 'applies not only to the historical facts themselves, but the inferences from those facts as well.'" Holloway v. Commonwealth, 57 Va. App. 658, 663-64, 705 S.E.2d 510, 512-13 (2011) (en banc) (first quoting Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006); then

- 13 -

quoting Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*)).  "[A] factfinder may 'draw reasonable inferences from basic facts to ultimate facts,'" so long as the inferences do not "become so attenuated that they 'push "into the realm of *non sequitur.*"'"  Bowman v. Commonwealth, 290 Va. 492, 500, 777 S.E.2d 851, 857 (2015) (first quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979); then quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231).

"Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred."  Hawkins v. Commonwealth, 65 Va. App. 101, 107, 774 S.E.2d 492, 495 (2015) (quoting Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78, 538 S.E.2d 316, 318 (2000)).  While consent "may be evidenced by conduct alone," a defendant's "mere acquiescence to a search is inadequate to establish that he or she voluntarily consented to it, and the Commonwealth bears a heavier burden 'where the alleged consent is based on an implication.'"  Id. (quoting Jean-Laurent, 34 Va. App. at 79, 538 S.E.2d at 318).  "'The presence of consent [to search] is a factual question to be determined by the trier of fact' based on the totality of the circumstances, and we [will] reverse a trial court's decision regarding the presence of consent only when it is plainly wrong."  Id. (quoting Jean-Laurent, 34 Va. App. at 79, 538 S.E.2d at 318).

The circuit court, weighing the totality of the circumstances, found that the evidence did not support finding that "inherent consent to remove the cap existed" if Spencer voluntarily gave the pill bottle to Baer.[12]  Viewing the evidence and all fairly deducible inferences that flow from it in the light most favorable to Spencer, this finding is not plainly wrong, because the circuit court could reasonably infer that a reasonable person would have understood from the parties'

___

[12] While the circuit court used the phrase "inherent consent," it is clear from the record that it used this formulation in response to the Commonwealth's implied consent argument.

- 14 -

exchange that Spencer's consent only extended to an examination of the bottle's exterior. When Officers Baer and Kelly encountered Spencer, they gave no indication that they were looking for illegal drugs or other contraband. In fact, the officers expressly stated their pursuit of unrelated purposes. In the context of this exchange, Baer noticed the pill bottle and asked Spencer not what it contained, but only whether he possessed a valid medical authorization for the bottle. When Spencer stated that he did not have a prescription, Baer asked if he could "see" the bottle. Spencer gave it to Baer, and when Baer held and examined the bottle, he could see that it did not have a prescription label or any other label on it. A reasonable person under these circumstances could have understood that when Spencer gave the bottle to Baer for him to "see" it, he did so for the limited purpose of permitting Baer to verify his statement that he did not have a prescription and, if he did not, to see if the bottle had a label indicating that it contained another person's prescription medication.

While a request to "see" an object may be interpreted as a request both to visually inspect that object and to open it, such a request may also, as the majority acknowledges, be contextually understood as simply a request to view the object to verify or refute information. While Baer's request to "see" the bottle was ambiguous, in our present procedural posture, the evidence and all reasonable inferences flowing from it must be viewed in the light most favorable to Spencer. Thus, Spencer's act in giving the prescription bottle to Baer must be interpreted as a limited grant of consent for Baer to view the bottle's exterior, and not as a broader grant of consent for Baer to open and search the bottle for contraband.

The circuit court was not plainly wrong in inferring that a reasonable person, under the facts and circumstances here, would have understood that when Spencer handed the pill bottle to Baer for him to "see the bottle," his action did not convey consent for Baer to immediately open the bottle and inspect its contents, since there was no prescription label in another person's name

or any other indication that the contents were somehow illicit. Because neither this inference, nor the circuit court's consequent finding that the evidence did not support the conclusion that there was implied consent to remove the cap, was plainly wrong, I would affirm the circuit court's judgment granting Spencer's motion to suppress.[13]

---

[13] I further disagree that United States v. Stewart, 93 F.3d 189 (5th Cir. 1996), is applicable to the instant case. The defendant in Stewart entered a conditional guilty plea, reserving her right to challenge on appeal the trial court's denial of her motion to suppress. Id. at 190-91. Thus, the procedural posture in Stewart differed from that of the instant case, where we must view the evidence and all reasonable inferences derived therefrom in the light most favorable to Spencer because he, rather than the government, prevailed below. Further, in denying the defendant's motion to suppress, the trial court in Stewart necessarily found that there was sufficient evidence of consent to search the contents of the pill bottle—the opposite of the trial court's finding here, which we must affirm unless plainly wrong or without supporting evidence. Id. at 191-92.