COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


ERIE LAWRENCE
                                              OPINION BY
v.    Record No. 0625-02-2        JUDGE JAMES W. BENTON, JR.
                                          MARCH 18, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                 Buford M. Parsons, Jr., Judge Designate

            Joseph W. Kaestner (Kaestner & Associates,
            P.C., on brief), for appellant.

            Virginia B. Theisen, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     The trial judge denied Erie Lawrence's motion to suppress

heroin seized from his pocket and convicted him of possession of

heroin.  Lawrence contends the warrantless search was unlawful.

We agree and reverse the conviction.

                              I.

     The evidence proved Officer Christopher Jernigan went to a

residence to investigate "a trouble unknown" report, which vaguely

suggested someone was inside the residence.  While walking to the

residence, the officer saw a woman sleeping in an automobile with

the engine running.  After learning that the homeowner, who only

spoke Spanish, was attempting to report cars racing along the

street, the officer left the residence.  Believing "something

[was] not right" with the woman who was sleeping in the automobile, the officer initiated a conversation with her. She told the officer she was waiting for the driver to return.

The officer "ran the tags" on the automobile and learned they were registered to a pickup truck. After he obtained that information, the woman exited the automobile and asked if she was free to leave. The officer testified that he "said certainly, I have nothing. Go ahead." Shortly after she walked away, Lawrence approached the automobile. When the officer asked "is that your car?," Lawrence said it was. The officer then directed Lawrence to step toward him, told Lawrence he was "not free to leave," and "put him in handcuffs." The officer testified that he uses "the same" procedure when detaining persons and that he had no reason to believe Lawrence posed a threat to him.

The officer described the events that followed:

> I believe he asked if he was under arrest at that time. I said no, you're under investigative detention. I said do you have a driver's license? He said it's in my pocket. . . .
>
> I said where was his license located. He told me that it was in his inner jacket pocket. When I went into the pocket to retrieve it, pulled out his license and also unknown to me, a cellophane bag, in which it contained a brownish substance that I believed at that point in time to be heroin.

At that point in time, I placed him under arrest, and he was transported to lockup, charged with felony possession with intent to distribute.

The trial judge denied Lawrence's motion to suppress the heroin. At the conclusion of further evidence, which consisted of the officer's testimony concerning the heroin, the trial judge convicted Lawrence of possession of heroin.

## II.

Lawrence contends that the officer lacked authority to handcuff and to search him. The Commonwealth replies that all aspects of the detention were lawful and that the search was based upon Lawrence's consent or, in the alternative, upon probable cause to believe "Lawrence's driver's license was in his pocket and . . . would be 'useful as evidence.'"

We apply the following standards on our review:

> In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [the appellant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed de novo on appeal. In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them . . . . We analyze a trial judge's determination whether the Fourth Amendment was implicated by applying de novo our own legal analysis of whether based on those facts a seizure occurred.

- 3 -

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (footnote and citations omitted).

The essential facts are not disputed. The officer first noticed the automobile because its engine was running and it was occupied by a woman who was asleep. When he spoke to the woman, she said she had come to that location with the driver but did not know his name, or the house he entered, or when he was expected to return. The officer "ran the tags on the [automobile]" and learned that they belonged to a truck.

Various statutes, including Code § 46.2-715, require that license plates assigned to a motor vehicle be displayed on that motor vehicle. Under certain conditions, however, the Commissioner of the Department of Motor Vehicles may permit "the use of license plates on a vehicle other than the vehicle for which the license plates were issued." Code § 46.2-719. See also Code § 46.2-720. Nonetheless, the officer had a sufficient basis to reasonably suspect a violation of Code § 46.2-715 and to detain Lawrence for an investigation when Lawrence identified himself as the operator of the automobile. Unless otherwise stated, however, violations of the motor vehicles statutes are "traffic infractions," Code § 46.2-113, and ordinarily subject the violator to the issuance of a summons. See Code § 46.2-936.

The Commonwealth argues that the officer could have "reasonably . . . suspect[ed] that the car was stolen." We disagree. The evidence in the record did not prove

- 4 -

circumstances that raised a reasonable suspicion the automobile had been stolen. After the officer "ran the tags," he received no report either that the automobile in his presence had been stolen or that the truck whose license plates were on the automobile had been stolen. The officer did not testify that he observed any damage suggesting a forced entry or rigging of the ignition. The automobile's keys were in the ignition, and a person was in the automobile. Significantly, when the woman in the automobile asked if she could leave, the officer "said certainly, I have nothing. Go ahead." At that time, the officer knew that the license plates belonged to another vehicle. The totality of the circumstances negates any suggestion of a reasonable belief the automobile was stolen.

In light of the circumstances, it was unreasonable for the officer to put handcuffs on Lawrence while investigating a traffic violation that would warrant only the issuance of a summons for the violation.

> [T]he investigative methods employed [during an investigative detention] should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

Florida v. Royer, 460 U.S. 491, 500 (1983).

- 5 -

The Commonwealth attempts to justify the officer's use of the handcuffs by noting that another man was with Lawrence and that "'several' other individuals were on the scene interfering with the encounter."  The record, however, refutes the Commonwealth's contentions.

> Q.  When you put him in handcuffs, did you conduct a pat down of the outside of his clothing?
>
> A.  No, I hadn't gotten that far yet, sir. I put him in handcuffs, and I said where's your license?  My next thing is going directly to the Social Security number to find out if this guy has got any warrants, okay?
>
> At that point in time, he's in handcuffs. At that point in time, I run the license to do my pat down.  The same thing every time.

The officer merely testified that he used the handcuffs because Lawrence was "under investigative detention."  Beyond this generalized statement of the officer's usual procedure, nothing in the record supports the officer's decision to use handcuffs while investigating a traffic infraction that was subject to a summons for the violation.  The officer never testified that the presence of Lawrence's companion or any other person compelled him to place Lawrence in handcuffs.  In addition, the officer did not testify that he believed Lawrence was armed and dangerous.  Indeed, he testified that the circumstances did not indicate Lawrence did anything to threaten his continued investigation.  Finally, the officer's own

testimony undermines the Commonwealth's claim that the officer used the handcuffs because the circumstances so required.  It is clear from the officer's testimony that he always places suspects in handcuffs while conducting investigative detentions. He testified he does "[t]he same thing every time."  We hold that the officer's decision to handcuff Lawrence was a more serious intrusion on personal liberty than is allowable under these circumstances and, thus, constituted unreasonable restraint.  Cf. Sattler v. Commonwealth, 20 Va. App. 366, 369, 457 S.E.2d 398, 400 (1995) (holding that an officer's "generalized policy of frisking all [detained] persons" is unreasonable).

The Commonwealth contends Lawrence consented to the officer's actions in retrieving his license.  We disagree.

Recently, we addressed the issue of the determinations to be made when consent to search is raised.

> "'Consent to a search . . . must be
> unequivocal, specific and intelligently
> given . . . and it is not lightly to be
> inferred.'"  Although the consent need not
> be oral, mere acquiescence is not enough.
> Additionally, the Commonwealth bears the
> burden of proving that consent was in fact
> given, and "that burden is heavier where the
> alleged consent is based on an implication."

Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000).  In addition, and pertinent to this case, we held that "conduct which evidences nothing more than an acquiescence, particularly when no request to search has been

- 7 -

made, has been held insufficient to constitute consent." Id. at 79, 538 S.E.2d at 318.

The evidence proved that the officer did not ask for consent to obtain Lawrence's license or to reach into his pocket. The officer testified that after he put the handcuffs on Lawrence he asked Lawrence "where was his license located." When Lawrence said the license "was in his inner jacket pocket," the officer "went into the pocket to retrieve it." On cross-examination, the officer very clearly confirmed that he did not seek Lawrence's consent to a search.

> Q. Now, it was when Mr. Lawrence was in handcuffs that you asked him for his license; is that correct?
>
> A. I didn't ask him for his license. I asked him where his license was.
>
> Q. And he told you while he was in handcuffs; is that right?
>
> A. That is right.
>
> Q. And then you reached inside his jacket pocket?
>
> A. He wasn't able to do so, sir.

No evidence in the record proves consent was either requested or obtained. "The burden was upon the officer to obtain consent, not on [Lawrence] to affirmatively deny consent." Id. at 80, 538 S.E.2d at 319.

Accordingly, we hold that the trial judge erred in denying the motion to suppress, and we reverse the conviction and dismiss the indictment.

Reversed and dismissed.