COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and McClanahan
Argued in Chesapeake, Virginia

DAVID M. MORRIS, II

v.        Record No. 0580-10-1

CITY OF VIRGINIA BEACH

OPINION BY
JUDGE D. ARTHUR KELSEY
APRIL 19, 2011

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Stephen P. Pfeiffer (Wolcott Rivers Gates, on brief), for appellant.

(William F. Monroe, Assistant Commonwealth's Attorney, on brief), for appellee.


The trial court found that David M. Morris, II, a commercial truck driver, operated a tractor-trailer in violation of vehicle width and load securing requirements. On appeal, Morris claims the court should have suppressed the evidence of his violations because the investigating police officer unlawfully stopped his tractor-trailer. We disagree and affirm.

I.

When reviewing a denial of a suppression motion, we review the evidence "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). This standard requires us to "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation omitted). In doing so, we "consider facts presented both at the suppression hearing and at trial." Thomas v. Commonwealth, 57 Va. App. 267, 270, 701 S.E.2d 87, 89 (2010) (quoting Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009)).

In this case, the record shows Officer F.D. Godwin of the Virginia Beach Police Department was certified by the Commonwealth to inspect commercial tractor-trailer loads. While on a mid-morning patrol in December 2008, Officer Godwin observed what he described as an "oversized load" travel down an interstate highway and onto a municipal road in Virginia Beach. On the trailer was a large prefabricated concrete wall. The width of the load extended more than one foot over each side of the trailer chassis. Atop the over-wide load, which was approximately one foot high, sat various unsecured boxes.

Relying on his experience and training, Officer Godwin believed the trailer was the standard width of 8 feet, 6 inches. The load on this trailer, he testified, was "hanging well more than a foot on each side" — thus bringing the rig's apparent width to more than 10 feet, 6 inches. Under Code § 46.2-1109, "[n]o commercial vehicle shall exceed 102 inches [8 feet, 6 inches] in width when operating on any interstate highway or on any highway designated by the Commonwealth Transportation Board." See also Virginia Beach City Code § 21-1(a) (applying state restrictions to municipal roads). The officer also observed two escort vehicles and oversize load signage on the trailer.

The officer stopped the tractor-trailer for exceeding the statutory maximum load width. During the stop, Officer Godwin discovered the trailer load was 12 feet, 4 inches wide — well over the statutory maximum of 8 feet, 6 inches. The officer asked Morris, the tractor-trailer driver, if he had a special permit authorizing a load exceeding the maximum statutory width. Morris produced a "blanket" hauling permit, but it did not authorize transport of a trailer load exceeding the 12-foot "maximum width that can be hauled on a blanket permit." Morris did not have a special "single-trip" permit authorizing loads wider than 12 feet. In addition, Officer Godwin observed some unsecured rebar sitting on top of the load that, he testified, was "capable of rolling around."

Officer Godwin cited Morris for violating Virginia Beach City Code § 21-1 in two respects: (i) by exceeding the maximum width limitations, City Code § 21-1[1] (incorporating by reference Code §§ 46.2-1105(A)(4), 46.2-1109, 46.2-1139(A)),[2] and (ii) by failing to properly secure the trailer load, City Code § 21-1 (incorporating by reference Code § 46.2-1156).[3] In the trial court, Morris moved to suppress the evidence, claiming Officer Godwin had no legal basis to stop his tractor-trailer. The trial court disagreed, denied the motion to suppress, and found Morris guilty of both traffic infractions.

## II.

On appeal, Morris argues the trial court misapplied Fourth Amendment principles. "To allow for roving warrantless inspections," Morris argues, "where an officer can pull over whomever he chooses, whenever he chooses, provides absolutely no restraints on an officer's discretion and is an affront on the Fourth Amendment." Appellant's Br. at 7-8. We appreciate the general premise but do not believe it fairly describes the circumstances of this case.

---

[1] Subject to certain exceptions, Virginia Beach City Code § 21-1(a) incorporates by reference Title 46.2 of the Virginia Code. Under City Code § 21-1(a), "it shall be unlawful for any person within the City to violate or fail, neglect or refuse to comply with any provision" of the Virginia Code incorporated by reference. City Code § 21-4 classifies the violation as a "traffic infraction" with a maximum penalty of a $250 fine. City Code § 21-501(g), however, provides that "it shall be a misdemeanor for any person to violate any of the terms or conditions of such special permit." Given the conviction order's reference to City Code § 21-1 (the general incorporation provision), we assume but do not decide that Morris's convictions involve traffic infractions under City Code § 21-4.

[2] Code § 46.2-1109 limits the width of commercial vehicles to 8 feet, 6 inches. See also Code § 46.2-1105(A)(4) (clarifying width restriction applies to "load thereon"); Code § 46.2-1111 ("Nor shall such load exceed a total outside width as prescribed by §§ 46.2-1105 through 46.2-1109."). Code § 46.2-1139(A) authorizes the issuance of state and municipal permits "upon written application and for good cause being shown" allowing commercial vehicles to be "of a size or weight exceeding the maximum specified in this title."

[3] "No vehicle shall be operated or moved on any highway unless it is so constructed, maintained, and loaded as to prevent its contents from dropping, sifting, leaking, or otherwise escaping." Code § 46.2-1156(A).

A. STANDARD OF APPELLATE REVIEW

Faced with a suppression motion, a court should not limit itself "to what the stopping officer says or to evidence of his subjective rationale," Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*) (citation omitted), but instead should make "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken," Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

For purposes of assessing the legality of an officer's actions, his "subjective motivation is irrelevant." Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (quoting Brigham City v. Stuart, 547 U.S. 398, 404 (2006)). A police officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Thomas, 57 Va. App. at 273, 701 S.E.2d at 90 (quoting Stuart, 547 U.S. at 404). Cf. Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010).

B. OVERWIDE TRACTOR-TRAILER LOADS

Much of the argument on brief, by both Morris and the City of Virginia Beach focuses on the administrative search and seizure exception to the Fourth Amendment and its application to the commercial trucking industry. See generally United States v. Ponce-Aldona, 579 F.3d 1218, 1226 (11th Cir. 2009).[4] Morris argues the exception does not apply to the stop of his tractor-trailer, while the City argues that it does.

---

[4] Compare McCauley v. Commonwealth, 17 Va. App. 150, 152, 435 S.E.2d 891, 892 (1993), aff'd on reh'g en banc, 443 S.E.2d 164, 165 (1994), with Ponce-Aldona, 579 F.3d at 1226; United States v. Ruiz, 569 F.3d 355, 356-57 (8th Cir. 2009) (*per curiam*); United States v.

As an appellate court, we seek "the best and narrowest ground available" for our decision, Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010), and thus strive to resolve cases "on what we conceive to be the determinative points," Justice Herbert B. Gregory, Shorter Judicial Opinions, 34 Va. L. Rev. 362, 365 (1948). Consistent with this commitment, we need not decide whether the administrative search and seizure exception would authorize a suspicionless seizure of Morris's tractor-trailer.[5] In this case, the facts observed by Officer Godwin provided a reasonable suspicion to stop Morris's tractor-trailer.[6]

Officer Godwin observed a trailer load exceeding the 8 foot, 6 inch width maximum under Code § 46.2-1109. See also Code § 46.2-1105(A)(4) (clarifying width restriction applies to "load thereon"); Code § 46.2-1111 ("Nor shall such load exceed a total outside width as prescribed by §§ 46.2-1105 through 46.2-1109."). By itself, Officer Godwin's observation established a *prima facie* violation of the statutory width maximum. Morris concedes on appeal this would be true, and thus reasonable suspicion would justify the stop, were it *not* for the fact that the officer also saw escort vehicles and oversize load signage on the trailer. See Oral Argument Audio at 18:12 to 19:53. The presence of these precautions, Morris argues, suggested he had the requisite permit — thereby rendering unreasonable any suspicion the officer would have otherwise had to stop his truck. Id. We disagree for several reasons.

---

Delgado, 545 F.3d 1195, 1202 (9th Cir. 2008); United States v. Castelo, 415 F.3d 407, 411 (5th Cir. 2005); United States v. Maldonado, 356 F.3d 130, 136 (1st Cir. 2004); United States v. Vasquez-Castillo, 258 F.3d 1207, 1212 (10th Cir. 2001); United States v. Dominguez-Prieto, 923 F.2d 464, 470 (6th Cir. 1991).

[5] For similar reasons, we need not decide the specific circumstances under which Code § 46.2-1139(D) authorizes the inspection of permits by investigating officers. See also 19 Va. Admin. Code §§ 30-20-40(A), 30-20-80 (incorporating by reference 49 C.F.R. § 396.9(a)); 19 Va. Admin. Code § 30-20-230 (authorizing officer to "enter upon and perform inspections of motor carrier vehicles in operation").

[6] Morris's counsel addressed the reasonable suspicion issue at oral argument on appeal. Given the thoroughness of the discussion, counsel declined our offer of an opportunity for additional briefing on this point. See Oral Argument Audio at 21:08 to 21:30.

First, underlying Morris's argument is an anomaly — the contention that an officer must presume a tractor-trailer, in apparent violation of the statutory maximum width, is *necessarily* exempt from the statute *if* the operator has taken certain precautions (such as the use of escort vehicles and oversize load signage) ordinarily required by the permitting authorities. If this premise were true, it would mean an officer could reasonably question whether there was a permit *only when* he has reason to believe that, if there *were* one, it was being violated. To be sure, Morris concedes on appeal that is just what he is saying. Id. at 19:25-53; see also id. at 16:43 to 16:56, 17:41 to 18:10.[7] The argument fails because it proves too much: It assumes police officers can enforce the permit requirements but not the statutory requirement that there be a permit in the first place.

The permitting scheme for oversized tractor-trailers traveling the municipal roads of Virginia Beach comes from Virginia Beach City Code § 21-501(a). It authorizes the Virginia Beach City Manager "in his discretion, upon application in writing and good cause being shown" to issue permits authorizing oversize commercial vehicles. Id. The permit may restrict the "route to be traversed" and may impose "any other requirements or conditions deemed necessary by the City Manager." Id. The permitting scheme, therefore, does not itemize exact precautions from which a police officer could (or, rather, must) assume the presence of the permit. All the more, observation of some permit-like precautions says nothing about the tractor-trailer's compliance with any route restrictions, time limits, or oversize maximum width allowances.

---

[7] As Morris's counsel concedes, the use of permit-like precautions "could be a ruse" in which truckers "just make it look like they're doing everything right and then don't have a permit whatsoever." Oral Argument Audio at 11:00-08. We agree. One would not expect an operator of an unpermitted, oversized, tractor-trailer load to advertise the fact by not having the most obvious precautions normally required by a permit.

We faced an analogous situation in <u>Lawrence v. Commonwealth</u>, 40 Va. App. 95, 578 S.E.2d 54 (2003). There, an officer stopped an automobile displaying a license plate issued to another vehicle. Code § 46.2-715, we observed, required license plates assigned to a motor vehicle to be displayed only on that motor vehicle. Even so, under "certain conditions" the Department of Motor Vehicles could issue a permit authorizing "the use of license plates on a vehicle other than the vehicle for which the license plates were issued." <u>Id.</u> at 100, 578 S.E.2d at 56 (quoting Code § 46.2-719). The possibility that a permit might have been issued, however, did not preclude the officer from stopping the automobile to investigate whether the permit had in fact been obtained. The *prima facie* violation of Code § 46.2-715 — though subject to exceptions authorized by a special permit — provided a "sufficient basis" for the officer to conduct a brief, investigatory stop. <u>Id.</u>[8]

Second, Code § 46.2-1109 is not simply a licensing scheme. It is a safety statute making it presumptively unsafe for *any* commercial vehicle to exceed the statutory maximum of 8 feet, 6 inches. See <u>Specialized Carriers & Rigging Ass'n v. Virginia</u>, 795 F.2d 1152, 1154-60 (4th Cir. 1986) (noting Virginia "regulates particularly and specially the transportation of overdimensional freight," because of the "patent hazard created by the overdimensional load on the highways"); <u>see</u> <u>also</u> Code §§ 46.2-1105(A)(4), 46.2-1111. No commercial vehicle operator has a presumptive right to be exempt from this limitation. To the contrary, "it is assumed that the state legislature did not intend . . . to allow, by permit, the movement of any and all vehicles or loads over the highways where such movements would exceed statutory limitations (especially where other forms of transportation are available or when loads can be reasonably reduced to meet statutory limits)." 24 Va. Admin. Code § 20-81-20(B).

_____

[8] We also held that, without additional information, the officer did not have a reasonable suspicion to believe the vehicle was stolen. <u>Lawrence</u>, 40 Va. App. at 100, 578 S.E.2d at 57.

- 7 -

Only a showing of "good cause" coupled with submission to additional precautions and limitations warrants the issuance of a special permit. Code § 46.2-1139(A); Virginia Beach City Code § 21-501(a). A tractor-trailer load in excess of Code § 46.2-1109's width maximum constitutes a *prima facie* statutory violation. The operator of the tractor-trailer may assert as an affirmative defense any special permit exempting him from the statute. Where, as here, incriminating conduct can be legally excused by an affirmative showing of a permit, an investigating officer has no legal duty to *presume* the excuse exists and thereby preclude any opportunity to determine whether it does or not. See, e.g., Lawrence, 40 Va. App. at 100, 578 S.E.2d at 56 (refusing to require an officer to presume a vehicle operator had a special DMV permit to use a license plate on a different vehicle).

Finally, we bring the analysis to closure by placing it securely within the context of settled principles governing all investigatory stops. The degree of certitude required by the reasonable suspicion standard is "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less demanding than that for probable cause." Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). It follows that the mere "possibility of an innocent explanation" does not necessarily exclude a reasonable suspicion that the suspect might be violating the law. Raab, 50 Va. App. at 581-82, 652 S.E.2d at 146 (quoting 4 Wayne R. LaFave, Search and Seizure § 9.5(b), at 482 (4th ed. 2004)). To be sure, "the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal — to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" Id. at 582, 652 S.E.2d at 146.

In sum, Officer Godwin observed a trailer load exceeding the 8 foot, 6 inch maximum width prescribed by Code § 46.2-1109. By itself, this observation established a *prima facie*

violation of the statute.  Despite the hypothesis (which later turned out to be false) that the truck driver, Morris, might have obtained a special permit authorizing him to exceed the statutory maximum with his 12-foot-4-inch wide load, Officer Godwin had the legal right to stop Morris and briefly investigate to determine whether the requisite permit had in fact been issued.

III.

Because Officer Godwin's investigatory stop cannot be deemed unreasonable as a matter of law, the trial court correctly denied Morris's motion to suppress.

Affirmed.