COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Elder, Humphreys and Huff
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 1665-12-3

WILLIAM WADE HENDERSON, III

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
FEBRUARY 5, 2013


FROM THE CIRCUIT COURT OF PATRICK COUNTY
David V. Williams, Judge

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Christina L. Slate, Assistant Public Defender (Office of the Public
Defender, on brief), for appellee.


The Commonwealth of Virginia appeals the judgment of the trial court in granting William

Wade Henderson's ("Henderson") motion to suppress any evidence obtained pursuant to the

warrantless search of Henderson's curtilage on September 17, 2011.  The Commonwealth argues

that the trial court erred in suppressing the evidence because the investigating officer had legitimate

concerns for her safety, as well as probable cause and exigent circumstances, when she inspected a

suspicious van and its surrounding area, and because Henderson consented to the officer's search in

the curtilage of his home.  Finding no error, we affirm the judgment of the trial court.

I.  BACKGROUND

"Upon appeal from a trial court's ruling on a motion to suppress, we must view the evidence

in the light most favorable to the prevailing party . . . granting to him all reasonable inferences fairly

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

deducible from the evidence." Commonwealth v. Spencer, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995). In the light most favorable to Henderson, the evidence established the following.

Deputy Molly Motley of Pittsylvania County traveled to Henderson's property in Patrick County to investigate several heat pump thefts that occurred in Pittsylvania County. The thefts involved heat pumps belonging to customers of Jack Holmes, for whom Henderson had worked. Henderson alone had performed services as Holmes' employee for several victims reporting stolen heat pumps.

Deputy Motley testified that, as she approached Henderson's mobile home in her patrol car, she saw a white van. However, Henderson testified that the white van in the backyard was not visible to someone driving towards the trailer on the driveway. Deputy Motley parked her patrol car behind three other vehicles that were in front of the trailer. Deputy Motley walked around her car, twelve to fifteen feet to a point where she could see the van and at that point she also saw a heat pump sitting next to the van. Deputy Motley was interested in the van because of reported break-ins associated with an older white work van with a ladder rack, and it "also kind of heightened [her] awareness, as far as officer safety." Deputy Motley passed the front door of the mobile home and went around to the back to the location where the van was parked. The back doors of the van were open, and multiple heat pump units were sitting outside the van and adjacent to the mobile home. At that point, Deputy Motley took twenty pictures of the van and the heat pump units. Some of the pictures were close up to the heat pumps and the van, others were from a distance.

After taking the first set of pictures, Deputy Motley knocked on the front door and Henderson let her in. Deputy Motley asked Henderson what he could tell her about all the air conditioners out back. Henderson said that he was turning some of them in "for Xmas bonus, some of them not." Deputy Motley explained that she was looking into air conditioner thefts, all of which

involved units that had been serviced by J. Holmes. Deputy Motley gave Henderson her phone number and said she would appreciate any help he could give. The conversation continued:

> Deputy Motley: . . . and if you don't mind I'm going back here and take a few pictures of the air condition units and all that ok?

> Henderson: You know I mean I wish you didn't cause Jack[']s going to know and it's going to be bull shit behind it.

> Deputy Motley: We're not talking, this has nothing to do with Jack. You know Jack has not filed a complaint I mean.

> Henderson: I mean the best thing to do on the [sic] now you see is get a number.

> Deputy Motley: Uh hum.

> Henderson: Cause you can look at a picture and say well that is it.

>     *    *    *    *    *    *    *

> Deputy Motley: That's all the invoices there. Uh but anyway if you don't mind I'll just take a few pictures of like I say this is just for our records, it's not as far as I'm concerned Jack Holmes, he's not filed a complaint. These home owners that have had air conditioners stolen filed the complaint so uh if it's not their air conditioners it's not anything.

> Henderson: Yeah

> Deputy Motley: You know?

> Henderson: Yeah

> Deputy Motley: Yeah not anything to do with Jack Holmes so

> Henderson: ----when we was turning them in

> Deputy Motley: Uh hum.

> Henderson: And we were suppose[d] to be splitting, I'm still trying to get my cut of that.

>     *    *    *    *    *    *    *

> Henderson: But uh, Jack had serial numbers for every one of them.

Deputy Motley: Right. Yeah that is what I'm saying I mean you know I'm just trying to take pictures, if uh that's not necessarily we just trying to follow up leads and stuff so uh have you been doing installs very long or

*       *       *       *       *       *       *

Henderson: Yeah. What do you do take the numbers and run them back with what Jack[']s got?

Deputy Motley: No not well

Henderson: Just going to show them to the home owners?

Deputy Motley: It depends on where they bought them, whoever has original records, you know we just compare it to that. Probably just I mean at this point we would probably just ask the home owners cause they would have to get the serial number to get their insurance.
. . .

When Deputy Motley exited Henderson's home the recorded conversation ended and she began taking a second set of pictures of the van and air conditioner or heat pump units, including some close up pictures of the serial numbers of the units. Henderson walked outside with Deputy Motley and saw her taking the pictures. Deputy Motley testified on cross-examination that Henderson never told her that she could take any pictures.

On Henderson's motion to suppress the evidence, the trial court found that while probable cause was present, exigent circumstances justifying a warrantless search were lacking, as "Deputy Motley could have radioed for backup in order to obtain a search warrant" to ensure evidence was preserved. The trial court found that there was no express consent because Henderson replied "I wish you didn't" when Deputy Motley asked to take pictures. The trial court further found that because Deputy Motley had taken pictures before speaking to Henderson, "any indicia that he consented to further photos would not be consent that meets the standard of being 'freely and voluntarily given.' Deer v. Commonwealth, 17 Va. App. 730 (1994)." Finally, the court found that the plain view doctrine did not permit the taking of the photos because Deputy Motley did not have

- 4 -

"a lawful right to access the units or the van because of their location on the property," as her approach to the van and the units "exceeded the scope of the implied consent doctrine." The court granted Henderson's motion to suppress.

## II. ANALYSIS

In reviewing a suppression motion on appeal, we defer to the trial court's findings of historical fact, but we review *de novo* the ultimate question of whether the officer violated the Fourth Amendment. Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449-50 (2003).

"'The exclusionary rule operates . . . against evidence seized and information acquired during an unlawful search or seizure . . . [and] against derivative evidence discovered because of the unlawful act.'" Gilpin v. Commonwealth, 26 Va. App. 105, 112, 493 S.E.2d 393, 397 (1997) (quoting Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 360 (1995)). "Thus, evidence must be suppressed when it is 'come at by exploitation of [the initial] illegality rather than by means sufficiently distinguishable to be purged of the primary taint.'" Id. (quoting Hall v. Commonwealth, 22 Va. App. 226, 229, 468 S.E.2d 693, 695 (1996)). To trigger the exclusionary rule, "the challenged 'police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" Washington v. Commonwealth, 60 Va. App. 427, 436, 728 S.E.2d 521, 525 (2012) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)).

"[T]he privacy interest in one's home has few equals," and the Fourth Amendment serves to protect that interest. Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005). Additionally, the "curtilage area immediately surrounding a private house has long been given protection as a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept." Dow Chem. Co. v. United States, 476 U.S. 227, 235 (1986).

"'The curtilage of a dwelling house is a space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment; the yard, garden or field which is near to and used in connection with the dwelling.'" Patler v. Commonwealth, 211 Va. 448, 451, 177 S.E.2d 618, 620 (1970) (quoting Bare v. Commonwealth, 122 Va. 783, 795, 94 S.E. 168, 172 (1917)).

The Commonwealth withdrew its first assignment of error concerning Henderson's standing to object to the photographs taken at 1008 Mountain View Church Road, where Henderson lived.

### A. Officer Safety

The Commonwealth's second assignment of error is that the trial court erred in ruling that "Deputy Molly Motley did not have legitimate concerns for officer safety when she inspected the suspicious van and its surrounding area." The Commonwealth references two pages in the record where this assignment of error is preserved. The first cite is to Deputy Motley's testimony about seeing the white van next to Henderson's residence:

> A. I was parked in line with the trailer, with the mobile home, and when I saw the van, there were a couple of things. One: I was interested in it, as far as these break-ins. It also kind of heightened my awareness, as far as officer safety, so I stepped around my car. I probably walked twelve or fifteen feet and at that point I could see the van and a heat pump sitting next to it.

On the second page cited by the Commonwealth, *Henderson's* counsel addressed the above quoted testimony in argument on the motion:

> Furthermore, your honor, the Commonwealth argues exigent circumstances. Deputy Motley, an officer not from Patrick County, went alone by choice. She certainly could have radioed for back-up, and I'm sure Patrick County would have been happy to oblige at that time. She mentioned something about officer safety, but doesn't give any elements or any evidence whatsoever as to what caused her to have any concerns. There was simply nothing in evidence that would give rise to exigent circumstances.

These are the only references to "officer safety" issues in the record. The Commonwealth points to no other facts or argument below in support of its argument on appeal that exigent

- 6 -

circumstances justified a warrantless search. The trial court did not address "officer safety" in its ruling rejecting the Commonwealth's exigent circumstances argument, as the Commonwealth asserts in its assignment of error. Furthermore, the Commonwealth now argues for the first time on appeal that Deputy Motley was justified in proceeding to the curtilage to investigate the van under the "protective sweep" doctrine.[1]

Rule 5A:18 states that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18

> places the parties on notice that they must give the trial court the first opportunity to rule on disputed evidentiary and procedural questions. The purpose of this rule is to allow correction of an error if possible during the trial, thereby avoiding the necessity of mistrials and reversals. To hold otherwise would invite parties to remain silent at trial, possibly resulting in the trial court committing needless error.

Gardner v. Commonwealth, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986). The Commonwealth did not argue before the trial court that Deputy Motley's investigation of the van and search of the heat pumps were constitutionally valid under the protective sweep doctrine[2]; thus, the trial court did not have an opportunity to rule on the issue. Therefore, pursuant to Rule 5A:18, we will not address this assignment of error on appeal.

### B. Exigent Circumstances

The Commonwealth's third assignment of error is that the trial court erred in ruling that "Deputy Molly Motley did not have sufficient probable cause and exigent circumstances even after

---

[1] In the trial court, the Commonwealth only argued that the search was lawful and constitutional based on consent, the "plain view" doctrine, and probable cause and exigent circumstances.

[2] "A 'protective sweep' is a *quick and limited* search of premises, *incident to an arrest* and conducted to protect the safety of police officers or others. *It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding*." Maryland v. Buie, 494 U.S. 325, 327 (1990) (emphasis added).

viewing certain items in plain view to justify taking some initial photographs of the general setup in the yard."

The trial court found, "In the present case probable cause is present, but exigent circumstances is lacking." The trial court explained that exigent circumstances did not exist because "Deputy Motley could have radioed for backup in order to obtain a search warrant. This would ensure that the evidence [would not] have been destroyed or removed and allowed a lawful search of the machine parts." The trial court also found that the plain view doctrine did not permit the taking of the photos because "Deputy Motley did not have a lawful right of access to the units or the van because of their location on the property."

We need not consider whether the trial court was correct in concluding that the mere presence of a white van on Henderson's property was sufficient to provide probable cause for a search because this record supports the trial court's finding that no exigent circumstances existed that would justify a warrantless search. Deputy Motley only saw the heat pumps that bolstered a probable cause finding *after* violating Henderson's Fourth Amendment rights by deviating from the path to the front door and conducting a warrantless search of the curtilage behind the mobile home. "It is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "The 'plain view doctrine' is an exception to the general rule that warrantless searches and seizures are presumptively unreasonable." Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991). "The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." Hamlin v. Commonwealth, 33 Va. App. 494, 502, 534 S.E.2d 363, 366 (2000). A search is valid if the "plain view" doctrine would have sustained a seizure of the

property.  Arizona v. Hicks, 480 U.S. 321, 326 (1987).  "*It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.*"  Horton v. California, 496 U.S. 128, 136 (1990) (emphasis added).

> In order for a seizure to be permissible under the plain view doctrine, two requirements must be met:  "(a*) the officer must be lawfully in a position to view and seize the item*, [and] (b) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject to seizure."

Hamlin, 33 Va. App. at 502, 534 S.E.2d at 366 (emphasis added) (quoting Conway v. Commonwealth, 12 Va. App. 711, 718, 407 S.E.2d 310, 314 (1991)).

"It is generally recognized that, absent any affirmative attempts to discourage trespassers, owners or possessors of private property impliedly consent to have members of the general public intrude upon certain, limited areas of their property."  Robinson v. Commonwealth, 47 Va. App. 533, 545, 625 S.E.2d 651, 657 (2006).  "This invitation, where it exists, extends only to those areas of the property that would be used when approaching the residence in an ordinary attempt to speak with the occupants."  Id. at 546, 625 S.E.2d at 657.  The homeowner has waived any reasonable expectation of privacy in areas of the curtilage associated with the path that a visitor could reasonably be expected to cross when approaching the front door.  Thus, these areas, such as the driveway, sidewalks, and front porch, are generally exempted from Fourth Amendment protection. Id.  "By extension, the same implied consent is extended to police officers who enter the curtilage and, while on the premises, restrict their conduct to those activities reasonably contemplated by the homeowner."  Id.  "Accordingly, 'when police enter onto private property . . . and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the Fourth Amendment.'"  Id. at 547, 625 S.E.2d at 657 (quoting Trimble v. State, 816 N.E.2d 83, 88 (Ind. Ct. App. 2004)).

In this case, when Deputy Motley first saw the heat pumps her presence in the curtilage was unlawful. She testified that upon pulling into Henderson's driveway she walked twelve to fifteen feet around her car before she saw the first heat pump. Then she walked around the side of the trailer to the van and heat pumps, and took twenty pictures before going to the front door and knocking. As the trial court correctly found, Deputy Motley clearly exceeded the implied consent doctrine of <u>Robinson</u> by deviating from the invited path to the front door. The search was not permissible under the plain view doctrine as Deputy Motley was not lawfully in a position to view the heat pumps when she observed and photographed them. Therefore, the trial court was correct in concluding that Deputy Motley violated the Fourth Amendment prior to any supposed exigency arising.

"'Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" <u>Herring</u>, 555 U.S. at 143 (quoting <u>Illinois v. Krull</u>, 480 U.S. 340, 348-49 (1987)). Deputy Motley is charged with the knowledge that she needed a warrant to enter the curtilage of a person's home, absent probable cause and exigent circumstances. While the trial court found that probable cause existed, this record is devoid of facts supporting exigent circumstances prior to Deputy Motley's deviation from her lawful path to the front door. Thus, the trial court correctly granted Henderson's motion to suppress the evidence obtained in violation of Henderson's Fourth Amendment rights.

C. Consent to Search

The Commonwealth next argues that "Henderson consented to Deputy Motley's presence in his curtilage and her observation of the heat pumps." [3]

Under the Fourth and Fourteenth Amendments, a search conducted without a warrant is *per se* unreasonable, subject only to a few well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Id. "Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding." United States v. Drayton, 536 U.S. 194, 207 (2002). It is the prosecutor's burden to prove that consent was freely and voluntarily given. Schneckloth, 412 U.S. at 222. Whether or not consent to a search was voluntarily given "is a question of fact to be determined from the totality of all the circumstances." Id. at 227.

> "Consent to a search must be unequivocal, specific and intelligently given and it is not lightly to be inferred." Although the consent need not be oral, mere acquiescence is not enough. Additionally, the Commonwealth bears the burden of proving that consent was in fact

---

[3] The Commonwealth combined its argument on brief for the following two assignments of error:

> The Commonwealth asserts the trial court erred in making the following rulings:
>
>      *     *     *     *     *     *     *
>
> IV. Henderson clearly and unambiguously indicated his desire for Deputy Molly Motley to not take any photographs when he stated, "I wish you didn't [be]cause Jack's going to know and it's [sic] going to be bull shit behind it."
>
> V. Henderson did not give inferred consent for Deputy Molly Motley to take any photographs when he suggested she compare serial numbers and accompanied her to take photographs without interrupting her.

given, and "that burden is heavier where the alleged consent is based on an implication."

Lawrence v. Commonwealth, 40 Va. App. 95, 102, 578 S.E.2d 54, 58 (2003) (quoting Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000)). The burden is "'upon the officer to obtain consent, not on [Henderson] to affirmatively deny consent.'" Id. at 103, 578 S.E.2d at 58 (quoting Jean-Laurent, 34 Va. App. at 80, 538 S.E.2d at 319). The law requires an unequivocal and specific consent to search; an ambiguous response to a request to search is not sufficient. See Jean-Laurent, 34 Va. App. at 80, 538 S.E.2d at 319. Further, an officer's warrantless search prior to requesting consent implies that the person asked has no choice in whether or not the officer searches. See Walls v. Commonwealth, 2 Va. App. 639, 646, 347 S.E.2d 175, 179 (1986).

Deputy Motley did not obtain consent from Henderson to search his property. First, Deputy Motley searched the curtilage and took a set of pictures before ever speaking to Henderson. When Deputy Motley finally spoke to Henderson and asked if she could take some pictures he responded, "I wish you didn't . . . ." Deputy Motley later said,

> Uh but anyway if you don't mind I'll just take a few pictures of like I say this is just for our records, it's not as far as I'm concerned Jack Holmes, he's not filed a complaint. These home owners that have had air conditioners stolen filed the complaint so uh if it's not their air conditioners it's not anything.

Henderson said, "Yeah," but in the context of the compound statement above and in the light most favorable to Henderson as the party that prevailed below, this was not responsive to a question requesting permission. Deputy Motley conceded that Henderson never said, "Yes; go ahead and take pictures." The Commonwealth argues that Henderson had begun aiding Deputy Motley in her investigation by suggesting that she should get serial numbers. However, whether Deputy Motley proceeded with Henderson's permission is a question of fact that was resolved by the trial court against the Commonwealth and the record supports the trial court's conclusion. Henderson testified that he meant that Deputy Motley needed to get serial numbers from Jack Holmes; he was not

giving her permission to go search his property for serial numbers on heat pumps.  The Commonwealth failed to prove with this evidence that Henderson gave unambiguous and unequivocal consent, either express or implied, to search his property.

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>