COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Friedman and Frucci
Argued at Norfolk, Virginia


JASON JAMAL LOCUST

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0258-24-1                   JUDGE FRANK K. FRIEDMAN
                                                              APRIL 29, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.  Appellant submitting on brief.

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


        Following the trial court's denial of his motion to suppress the evidence, Jason Jamal

Locust entered a conditional plea of guilty to possessing a firearm by a convicted violent felon.

The court sentenced Locust to three years of incarceration with one year suspended.  On appeal,

Locust argues that "the trial court erred in denying [his] motion to suppress evidence because the

discovery and seizure of the firearm were the product of an illegal detention not predicated on a

reasonable and articulable suspicion of illegal activity."  For the following reasons, we affirm his

conviction.

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## BACKGROUND[1]

On November 23, 2022, Officer Antonio Lockinour was on routine patrol in the City of Norfolk. That evening, Officer Lockinour drove to the "Tinee Giant" convenience store where he encountered Locust. Officer Lockinour noticed a "large bulky item that was swinging" in Locust's pocket and seemed "unnatural." Locust looked in Officer Lockinour's direction and shielded his body away from the officer before going inside the store.

When Locust exited the store, he walked down the street towards the nearby residences and Officer Lockinour and another officer followed on foot. When the officers caught up to Locust, Officer Lockinour called out, "What's up bossman?," and Locust responded, "What's up, what's going on?" Officer Lockinour stated that he was "just out [there] enjoying the weather." While they talked, Officer Lockinour directed the other officer's attention to the "L-shape[d]" "large bulky item" in Locust's left pocket which appeared to be the "slide" and "handle" of a firearm. Officer Lockinour asked Locust if he had a concealed weapon permit and Locust responded, "I don't know what you're talking about." The officer described the "L-shape[d] bulge" in Locust's left pocket and Locust replied that they "d[id]n't see nothing." Officer Lockinour asked to see Locust's concealed weapon permit and when Locust did not comply, Officer Lockinour asked Locust if he had a permit. Locust replied, "Yea, I'm about to go get it." Officer Lockinour asked Locust for his identification so they could check if he had a permit on file.

---

[1] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Locust arrived at the residence where he was staying and told the officers he was "about to go get his information." Officer Lockinour expressed his concern about the "heavy" "L-shaped" item in Locust's pocket and told Locust he saw him tapping the item and turning his body away from the officers. At that point, the officers prevented Locust from entering the residence and asked for his identification. Officer Lockinour looked up Locust's information and determined that he did not have a concealed weapon permit. Officer Lockinour recovered the firearm from Locust and subsequently learned that Locust was a convicted felon.

In the trial court, Locust moved to suppress the evidence on the ground that the officers did not have a reasonable articulable suspicion to stop Locust "solely on the presence of what appear[ed] to be a concealed firearm without establishing first that it [was] concealed in violation of the law." The trial court took Locust's motion under advisement.

On October 18, 2023, the trial court issued an order denying Locust's motion to suppress. The court stated that Locust evaded the officers' questions about whether he possessed a concealed weapon permit, which gave the officers reasonable suspicion that Locust was unlawfully carrying a concealed weapon. Citing *Morris v. City of Virginia Beach*, 58 Va. App. 173, 183 (2011), the court stated that "[t]he mere possibility of an innocent explanation – that the defendant in fact had a concealed weapons permit – does not necessarily exclude a reasonable suspicion that the defendant might be violating the law."

Locust entered a conditional guilty plea stipulating to the sufficiency of the evidence and reserving his right to appeal the denial of his suppression motion. At the plea hearing, the parties executed a written stipulation of facts. The stipulation provided that,

> [o]n or about November 23, 2022, the defendant, Jason Jamal Locust, was walking on the 700 block of Chapel Street in the City of Norfolk when Norfolk Police officers observed a large L-shaped bulge in his left pocket. Officers approached and were able to observe the slide and grip of a firearm in his pocket. Officers followed Locust and asked for his identifying information. Locust

did not have a concealed carry permit on file and had previously been convicted of robbery. Locust willingly handed over the firearm.

The trial court convicted Locust of possession of a firearm by a convicted violent felon and sentenced him to three years of incarceration with one year suspended.

ANALYSIS

"In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). In conducting our review, we are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence," however, we review "the trial court's application of the law de novo." *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008). "Thus, 'we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements.'" *Shiflett v. Commonwealth*, 47 Va. App. 141, 145-46 (2005) (quoting *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004)). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Aponte*, 68 Va. App. at 156 (quoting *Hairston*, 67 Va. App. at 560).

On appeal, Locust argues that Officer Lockinour lacked a reasonable and articulable basis to stop and detain him. He contends that the officer's impression that the item was a concealed firearm was "hardly more than sheer speculation" and that the trial court "relied exclusively on the officer's subjective opinion that the item was likely a firearm." Locust's claim, however, is at odds with the parties' joint stipulation which states: the officers "were able to observe the slide and grip of a firearm in his pocket."

- 4 -

"The Fourth Amendment protects people from unreasonable searches and seizures." *Williams v. Commonwealth*, 71 Va. App. 462, 476 (2020). "Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry* stops, and (3) highly intrusive arrests and searches founded on probable cause." *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003) (alteration in original) (quoting *Wechsler v. Commonwealth*, 20 Va. App. 162, 169 (1995)). "Law enforcement officers may approach a citizen in public places and engage in consensual encounters involving questioning of the citizen, if the citizen is willing to listen, without violating the Fourth Amendment's prohibition of unreasonable seizures." *Jones v. Commonwealth*, 279 Va. 521, 528 (2010). "A consensual encounter between the police and an individual 'will not trigger Fourth Amendment scrutiny unless it loses its consensual nature' and renders the person seized under the Fourth Amendment." *Beasley v. Commonwealth*, 60 Va. App. 381, 390 (2012) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "A person is not seized according to the Fourth Amendment until he submits to a police officer's show of authority." *Hill v. Commonwealth*, 68 Va. App. 610, 617 (2018).

"If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, he may detain the person to conduct a brief investigation without violating the Fourth Amendment's protection against unreasonable searches and seizures." *Atkins v. Commonwealth*, 57 Va. App. 2, 19 (2010). "A reasonable, articulable suspicion is '"a particularized and objective basis" for suspecting the person stopped of criminal activity.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "To establish reasonable suspicion, an officer must be able to

articulate more than an unparticularized suspicion or 'hunch' that criminal activity is afoot." *Rudolph v. Commonwealth*, 277 Va. 209, 210 (2009).

"When a court reviews whether an officer had reasonable suspicion to temporarily detain a person, it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." *Matthews v. Commonwealth*, 65 Va. App. 334, 346 (2015). "For purposes of assessing the legality of an officer's actions, his 'subjective motivation is irrelevant.'" *Morris*, 58 Va. App. at 179 (quoting *Robinson v. Commonwealth*, 273 Va. 26, 37 (2007)). But "[a]n officer is entitled to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person." *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009) (citation omitted). "The possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop." *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007).

The initial encounter between Locust and the officers was entirely consensual because of Locust's ability to ignore and walk away from the officers until he was detained in front of the residence. Officer Lockinour did not order Locust to stop or apply any physical force. He simply asked Locust a question: "What's up bossman?" That question does not amount to a detention requiring reasonable suspicion. As the encounter developed, Officer Lockinour developed reasonable articulable suspicion that Locust may have been unlawfully carrying a concealed weapon. Officer Lockinour had already seen a "large bulky item that was swinging" in Locust's pocket before he confronted Locust on the street. He testified that he had extensive hands-on training with different types of firearms and 12 years of military experience. When the officers caught up with Locust, they had the opportunity to view the "L-shape[d]" "large bulky item" in his left pocket which looked like the "slide" and "handle" of a firearm. Officer Lockinour

also observed Locust turn his body away from the officers and tap the "heavy" "L-shaped" item in his left pocket. Locust evaded Officer Lockinour's questions.

Locust suggests that he was minding his own business and did not threaten anyone or cause trouble while stopping at the convenience store. That may be true, but it does not change the fact that the officers' observation of the weapon and perception of Locust's behavior (including turning his body to conceal the gun and evading questions) permitted them to view his conduct as suspicious. Evidence on appeal is viewed in best light to the prevailing party. *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022). In best light to the Commonwealth, the officers' observation of Locust's behavior led them to the reasonable conclusion that his conduct was suspicious. *See Thompson*, 54 Va. App. at 7.[2] Thus, the officers' brief detention of Locust was permissible to allow them to confirm or dispel their suspicion that Locust was committing a crime. *See Alston v. Commonwealth*, 40 Va. App. 728, 741 (2003).

In consideration of all the circumstances, we conclude the officers, at the time of Locust's seizure, had a reasonable articulable suspicion that Locust unlawfully possessed a concealed weapon.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*

---

[2] "[W]hen evidence, a stipulation, or an unobjected-to proffer is presented to the trial court in conjunction with a guilty plea, an appellate court will consider it alongside the other evidence presented during the earlier suppression hearing." *Smith v. Commonwealth*, 61 Va. App. 112, 116 n.2 (2012).